UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

RONALD WILLIAM BROOKS,            )
                                  )
        Plaintiff,                )
                                  )
    vs.                           )        Case No. 1:13CV65 CDP
                                  )
CAROLYN W. COLVIN,[1]             )
Acting Commissioner of Social Security, )
                                  )
        Defendant.                )

## MEMORANDUM AND ORDER

This is an action for review of the Commissioner's decision denying Ronald

William Brooks's application for Supplemental Security Income (SSI) under Title

XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*[2] The administrative law

judge fully considered Brooks's subjective complaints, and found his claims to be

overstated. The question posed to the vocational expert was based upon a residual

functional capacity determination supported by substantial evidence, and the

administrative law judge was not required to consider responses to hypotheticals

not reflective of that determination. I will affirm the Commissioner's decision to

deny Brooks benefits under Title XVI.

_____

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.
[2] Brooks also filed an application for disability insurance benefits under Title II of the Social
Security Act. However, Brooks had an insufficient number of quarters of disability insurance to
meet the insured status requirements under the Social Security Act. *See* 42 U.S.C. §§
416(i)(3)(B), 423(c)(1)(B); 20 C.F.R. § 404.130. As a result, Brooks's application for SSI was
the only claim before the ALJ.

# 1. **Background**

## 1.1    Procedural History

In August 2010, Brooks filed his application for SSI. On December 22, 2010, the state agency denied Plaintiff's claim.[3] Following a hearing held on November 2, 2011, an Administrative Law Judge (ALJ) issued a decision on March 9, 2012, finding that Plaintiff was not under a "disability" as defined in the Social Security Act. The Appeals Council of the Social Security Administration denied Brooks's request for review on February 27, 2013. Thus, the ALJ's decision stands as the final decision of the Commissioner.

## 1.2    Evidence before the ALJ

### 1.2.1    *Disability Report*

In the Disability Report that Brooks completed with help from the Social Security Administration, Brooks described himself as a six foot tall man weighing 215 pounds with an 11th grade education. He was approximately 49 years old at the time he applied for benefits. Brooks required assistance in submitting his application because he has difficulty reading and writing. He worked as a part-time concrete finisher as recently as 2010, and alleged May 1, 2010 as the onset date of his disability. Tr. 176–77, 199, 202.

---

[3] Missouri participates in the modified disability determination procedures, which eliminate the reconsideration step in the administrative appeals process. *See* 20 C.F.R. § 416.1406. Brooks's appeal proceeded directly from initial denial to ALJ review.

## 1.2.2    *Medical Records*[4]

In April 1999, Brooks received treatment for a fracture in the cervical region of his spine.  Brooks also reported a back injury suffered six years earlier that caused lingering pain.  He was advised to undergo physical therapy at two sessions per week and to return in one month for follow-up.  He did not return for treatment until August 1999, when he received a diagnosis of cervicocranial syndrome and degenerative disc disease.  Although spinal injections were not then advised, Brooks was instructed to restart physical therapy, which he had attended thrice and ceased due to work conflicts.  Tr. 513–17.

Brooks also sought treatment for a torn ligament in his knee in August 1999.  Tr. 519.  In August 2000, Brooks was treated again for knee pain, and it was noted that his knee had atrophied because he stopped his rehabilitation exercises.  Doctor Glen Johnson, M.D., estimated that Brooks sustained a permanent, partial disability "for failure of follow-up," and suggested that Brooks could improve some function with further exercises, but that this exercise would not change his rating.  Tr. 521–22.

Brooks eventually sought treatment from the Shannon County Family Clinic.  In January 2006, Brooks was diagnosed with generalized osteoarthritis of multiple sites and seasonal pattern depression.  By February 2006, there was no

---

[4] Although the court has examined the entirety of the transcript, the summary of medical records includes only those portions pertinent to Brooks's claims and the ALJ's decision.

longer a diagnosis for seasonal depression; however, the diagnosis of generalized osteoarthritis remained through July 2006. Tr. 325–27. In September 2006, Dr. Opinaldo diagnosed Brooks with Anxiety Disorder NOS, osteoarthritis, and a right rotator cuff sprain. In October of that year, alcoholism and nicotine dependence were added to his diagnoses. Tr. 324. In November, Feldene was prescribed.[5]

In December 2006, Brooks complained of sleeping difficulties and pain in his shoulders, lower back, and knee. Brooks was not in visible distress. His back was tender to palpation and had muscle spasms. The shoulders showed abnormalities and were tender at the joint. Both knees were tender to palpation, showed abnormalities, but there was no swelling in the suprapatellar region. He was diagnosed with osteoarthritis and seasonal depression and was prescribed Lisinopril and Trazodone.[6] A decrease in breath sounds was heard.

On January 9, 2007, Brooks reported using marijuana and cocaine. He was in no acute distress. He had muscle spasms in his back, which like his shoulders was tender to palpation. A decrease in breath sounds was heard. Dr. Opinaldo

---

[5] Feldene is a non-steroidal anti-inflammatory drug (NSAID) and is used to relieve symptoms of osteoarthritis and rheumatoid arthritis. Feldene: Drug Summary, Physicians' Desk Reference (PDR.net), *available at* http://www.pdr.net/drug-summary/feldene?druglabelid=1000 (last visited June 25, 2014).

[6] Lisinopril is an ACE inhibitor used as an anti-hypertensive medication, and is also known as Prinivil. Prinivil: Drug Summary, PDR.net, http://www.pdr.net/drug-summary/prinivil?druglabelid=376&id=839 (last visited June 25, 2014). Trazodone is used to manage anxiety disorders. Trazodone Hydrochloride: Drug Summary, PDR.net, http://www.pdr.net/drug-summary/trazodone-hydrochloride?druglabelid=3033&id=1684 (last visited June 25, 2014).

diagnosed him as having osteoarthritis, anxiety disorder NOS and nicotine dependence, and he was advised to get an X-ray of his back. Tr. 319–21.

Brooks continued treatment at the Shannon County Family Clinic approximately once a month throughout 2007 to refill his medications. He inconsistently complained of shoulder and neck pain and other ailments, including sinus congestion. Brooks was consistently diagnosed with osteoarthritis and inconsistently diagnosed with anxiety disorder NOS, seasonal pattern depression, right rotator cuff sprain, chronic obstructive pulmonary disease (COPD), alcoholism, and allergic rhinitis. Brooks was consistently prescribed acetaminophen-hydrocodone for pain, and was inconsistently instructed of other treatments including hot packs, advised of exercises, and told to get X-rays of his back, shoulders, and knees. Tr. 303–18.

In 2008, Brooks continued seeking treatment with the clinic. In January, Brooks reported that his pain was well-controlled with medication, and he was diagnosed with osteoarthritis and was continued on hydrocodone. In March, Brooks denied any complaints except for sinus pain and "back symptoms." In May, Brooks was diagnosed with osteoarthritis but reported no concerns. Brooks continued to report to the clinic for refills of his medications and for lab testing through August, when he was informed that he needed to seek a different provider within the clinic or elsewhere to refill his narcotic pain medications. In September,

Brooks again complained of back, knee, and shoulder pain, but reported no recent injury. He was diagnosed with anxiety order NOS and osteoarthritis; his back, knees, and shoulders were tender on palpation. Brooks was again prescribed hydrocodone as needed for pain. In October, Brooks again complained of shoulder, back, and knee pain. He reported that he did not get his X-rays as ordered because of financial constraints. Brooks was diagnosed with osteoarthritis and anxiety disorder NOS, and advised on back-pain management, to maintain exercise, and to return for an X-ray in 4 weeks. In November, Brooks reported suffering discomfort when sitting for long periods and with changes in the weather, but offered no specific problem. He was assessed with osteoarthritis, anxiety disorder NOS, and again prescribed hydrocodone. In December, X-rays of his spine, shoulders and knees resulted in diagnoses of back pain and degenerative joint disease. Tr. 279–302.

Through 2009, Brooks continued receiving treatment at the clinic, primarily for checkups, lab results, and medication refills. He continued complaining of back pain, but complained of neck, shoulder, and knee pain only intermittently. His diagnoses consistently included osteoarthritis and benign essential hypertension; they included knee joint pain and anxiety disorder NOS only in a few months. Brooks was prescribed hydrocodone for pain as needed. He reported using marijuana and cocaine. Tr. 252–78.

Brooks's treatment at the clinic continued through 2010. His primary reasons for seeking treatment were for medication refills and checkups. He reported that his back pain was controlled fairly well with hydrocodone, and his diagnoses often included osteoarthritis and pain in his neck, knees, and back. In March, Brooks said that his shoulder pain had declined since he had recently been off work, and in April he complained of insomnia. It was repeatedly noted that Brooks could not afford MRI and X-ray imaging. In June, hydrocodone was discontinued in favor of Ultram.[7] In July, Brooks obtained spinal X-rays and was taken off narcotic pain relievers and proscribed Mobic, an NSAID.[8] The X-rays revealed slight scoliosis and mild degenerative arthritis of the lumbar spine and mild-to-moderate degenerative arthritis and straightening of the normal lordotic curve in the cervical spine. In September, Brooks reported to the clinic complaining of anxiety. He reported that his urine test at the West Plains pain management center returned positive for cannabis. Brooks was diagnosed with depression with anxiety and was prescribed Wellbutrin and Buspar.[9] A straight-leg raising test was negative and Brooks had normal reflexes. Tr. 239–252, 328–29.

---

[7] Ultram is also known as Tramadol, and is an opiate pain reliever. Ultram: Drug Summary, PDR.net, http://www.pdr.net/drug-summary/ultram?druglabelid=950 (last visited June 25, 2014).
[8] Mobic is commonly prescribed for relief of osteoarthritis. Mobic: Drug Summary, PDR.net, http://www.pdr.net/drug-summary/mobic?druglabelid=1245 (last visited June 25, 2014).
[9] Wellbutrin is an antidepressant. Physicians' Desk Reference, 1290 (68th ed. 2014). Buspar, also known as Buspirone, is an antianxiety medication. Buspirone Hydrchloride Tablets, USP: Drug Summary, PDR.net, http://www.pdr.net/drug-summary/buspirone-hydrchloride-tablets-usp-5-mg-10-mg-15-mg-30-mg?druglabelid=1524&id=280 (last visited June 25, 2014).

Reports from the West Plains pain management center in September 2010 show that Brooks tested positive for cannabinoids and Benzodiazepine and for Tramadol, which he was prescribed.[10] Dr. DeVoe reported that Brooks lacked a "discrete diagnosis . . . to justify these narcotics" and opined that the narcotics were not necessary. Tr. 338.

Imaging performed in October 2010 revealed degenerative disc narrowing and disc bulge in Brooks's thoracic spine at T6-T7, mild disc bulge without significant encroachment at T7-T8, mild disc space degeneration at T8-T9 and T9-T10, and mild facet joint hypertrophy without encroachment at T10-T11. Imaging of his knee revealed no acute findings of the right knee. Imaging of the cervical vertebrae revealed some degenerative changes, mild disc spacing, and disc bulging and/or spondylosis. Tr. 345–47.

Through August 2011, Brooks reported to Missouri Highlands Healthcare for depression, allergies, and alcohol and tobacco abuse issues. Brooks was prescribed Wellbutrin, Trazodone, acetaminophen-hydrocodone, and Buspar. Brooks was repeatedly warned that his excessive consumption of alcohol was a cause of depression. Tr. 442–59.

In March 2011, Brooks reported to Pain Treatment Associates for low back pain, which he alleged was aggravated by bending or lifting and somewhat

---

[10] Benzodiazepine is a class of compounds with anti-anxiety, hypnotic, anticonvulsant, and skeletal muscle relaxant properties. *Stedman's Medical Dictionary*, 198 (27th ed. 1999).

alleviated with sitting.  He also reported that the pain limited his daily living activities and his sleep.  Tr. 437.  Although he had tenderness in his spine, Brooks had full motor strength and no tremors in his extremities.  Tr. 439.  Dr. Thompson suggested steroidal injections into the spine and lumbar spine medial branch diagnostic blocks, but Brooks declined treatment.  Tr. 433.  In the interim, Dr. Thompson prescribed Norco.[11]  Tr. 436.  In May 2011, Brooks continued to decline invasive treatments and described a "good benefit" from the Norco.  Tr. 430–31. In July 2011, Dr. Thompson increased the frequency of the Norco and granted an additional refill.  Tr. 427.  Brooks continued to decline interventional spine treatment.  *Id.*

### 1.2.3  *Claimant Testimony*

Brooks testified that he lives with his girlfriend of 23 years.  Although Brooks worked for 15 years in the concrete business, he had not worked for at least 18 months and had minimal reported earnings since 2002.[12]  All of his work experience involved heavy labor.  Brooks needs assistance reading and writing. HE testified that pain in his lower back, knees, shoulders, and neck prevents him from working.

---

[11] Norco is prescription opioid painkiller that contains hydrocodone.  Norco 5/325: Drug Summary, PDR.net, http://www.pdr.net/drug-summary/norco-5-325?druglabelid=2132 (last visited June 25, 2014).
[12] Brooks described himself as "self-employed" and, though he filed tax returns, only reported earnings in 2005 totaling less than $500.

Brooks admitted to being physically able to assist around the home, including cooking, limited sweeping, driving, and shopping. He has some difficulty sleeping, and pain in his shoulders hinders his ability to wash his own back. It takes Brooks 10 to 15 minutes to get dressed. He suffers from chronic obstructive pulmonary disease, but smokes a pack of cigarettes each day. His doctors have advised him to cease smoking and drinking alcohol, but Brooks continues those habits. Brooks testified that on an average day, he can walk 75 yards without rest, can stand for 20 minutes before sitting, and can sit for 45 minutes at a time. He can lift up to 20 pounds maximum and 5 to 10 pounds continuously.

Brooks is on a number of pain, blood pressure, anti-constipation, and sinus medications, which his live-in girlfriend reminds him to take. He stated that the medications cause drowsiness and sometimes dizziness. At one point, he injured his knee and received a 30% disability rating. In 1999, he broke his neck. Pain in his neck occurs twice a day, and lasts until his pain medication causes it to subside. Brooks reported a little arm pain and numbness in his fingers. Despite his numbness, Brooks can feel an object that he picks up. He testified that the pain in his lower back is continuous. Brooks described his knee pain as occurring "just a little bit every day if [he] walk[s] too far" and "continuous." Brooks stated that he cannot lift his leg properly to walk, but instead he drags it along. Tr. 49.

### 1.2.4    *Vocational Expert Testimony*

The ALJ also questioned a vocational expert.  The expert was presented with a hypothetical individual of Brooks's age, education, and work experience.  The individual could perform light work; occasionally climb stairs and ramps; occasionally stoop, kneel, crouch, and crawl.  The individual could never climb ropes, ladders, or scaffolds; he could perform frequent reaching in all directions.  The individual should avoid exposure to pulmonary irritants, unprotected heights, and excessive vibration.  The expert testified that such an individual could not perform Brooks's past work, but could perform light, simple, and unskilled work such as a bench assembler, collator operator, or folding-machine operator, and that such jobs existed in the local and national economy.[13]

The ALJ presented a second hypothetical, changing the exertional level to sedentary and limiting overhead reaching to occasional.  The expert testified that such an individual could work in sedentary, simple, unskilled jobs such as a patcher, final assembler, or document preparer-microfilm.   None of these jobs required reaching above work-station level, and they existed in the local and national economies.  A third hypothetical was presented adding the limitation that the individual must alternate sitting and standing every 60 minutes; this addition did not change the performable jobs.

---

[13] The expert testified to actual numbers of jobs present in Missouri and the national economy, but I have omitted those numbers for the sake of brevity.

A fourth hypothetical retained the limitations of the third but added occasional unscheduled disruptions of both workday and work week, secondary to the need to sit or lie down throughout the day, potential medication side effects, periods of decompensation, pain distraction, and unreliability in showing for work. The expert testified that such limitations would preclude work.

## 1.3    The ALJ's Decision

The ALJ made the following findings of fact and conclusions of law related to Brooks's SSI claim:

1.  Brooks has not engaged in substantial gainful activity since August 6, 2010, the application date.

2.  Brooks has the following severe impairments: degenerative disc disease, arthritis, history of bilateral rotator cuff tears, and chronic obstructive pulmonary disease (COPD).

3.  Brooks does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appx. 1.

4.  Brooks has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), in that he can frequently lift 10 pounds, occasionally lift 20 pounds, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  Non-exertional limitations include: occasionally climb ramps or stairs but never climb ropes, ladders, or scaffolds; occasionally stoop, kneel, crouch, and crawl; no more than frequent reaching in all directions, including overhead; avoid concentrated exposure to pulmonary irritants, unprotected heights, and excessive vibration.

5.  Brooks is unable to perform past relevant work.

6.  Brooks is a younger individual age 18-49 on the date the application was filed; the age category subsequently changed to closely approaching advanced age.

7.  Brooks has a limited education and can communicate in English.

8.  Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that Brooks is "not disabled," whether or not Brooks possesses transferable job skills.

9.  Considering Brooks's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Brooks can perform.

10.  Brooks has not been under a disability, as defined in the Social Security Act, since August 6, 2010, the date the application was filed.

## 2.  **Discussion**

### 2.1  Legal Standards

To be eligible for Supplemental Security Income under the Social Security Act, plaintiff must prove that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  An individual will be declared disabled "only if her physical or mental impairment or impairments are of such severity that she is not only unable to do [her] previous work but cannot, considering her age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or is equal to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If the claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled. At the fourth step, the Commissioner reviews whether the claimant has the Residual Functional Capacity (RFC) to perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled. If the claimant cannot perform his past relevant work, the burden of proof shifts and the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 20 C.F.R. § 416.920.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The plaintiff's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the plaintiff's impairments.
6. The testimony of vocational experts when required, which is based upon a proper hypothetical question that sets forth the claimant's impairment.

*Stewart v. Sec'y of Health & Human Servs.*, 957 F.2d 581, 585–86 (8th Cir. 1992)

(citing *Cruse v. Bowen*, 867 F.2d 1183, 1184–85 (8th Cir. 1989)).

The court must also consider any evidence which fairly detracts from the

Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d

1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions

may be drawn from the evidence, the Commissioner's findings may still be

supported by substantial evidence on the record as a whole. *Pearsall*, 274 F.3d at

1217 (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is

substantial evidence on the record as a whole, we must affirm the administrative

decision, even if the record could also have supported an opposite decision."

*Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks

and citation omitted); *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977

(8th Cir. 2003).

## 2.2   Analysis

Brooks claims that the ALJ's RFC determination was not supported by

substantial evidence because the ALJ improperly discounted his subjective

complaints regarding his ability to sit, stand, sleep, walk, and bathe. Brooks

further alleges the ALJ erred by relying on Brooks's decision to spend money on

cigarettes and alcohol rather than medical treatment. Brooks finally argues the

ALJ should have relied upon the VE's testimony with regard to the fourth and most

limited hypothetical, because that hypothetical was most analogous to what Brooks believes is the proper RFC.

### 2.2.1 *RFC Determination*

At Step Four of the sequential analysis, the ALJ is required to determine a claimant's RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). RFC is what a claimant can do despite the limitations caused by her impairments. *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003); *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the claimant has the burden to establish her RFC, the ALJ bears the primary responsibility for assessing the RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *McGeorge*, 321 F.3d at 768; *see also Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005); *Eichelberger*, 390 F.3d at 591.

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. *Id.* The absence of objective medical evidence is just one factor to be

considered in evaluating the claimant's credibility and complaints. *Id.* The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain; (3) any precipitating or aggravating factors; (4) the dosage, effectiveness, and side effects of any medication; and (5) the claimant's functional restrictions. *Id.* "Whether or not a[n] explanation for the pain can be given, it is nevertheless possible that the claimant is suffering from disabling pain." *Layton v. Heckler*, 726 F.2d 440, 442 (8th Cir. 1984).

The ALJ must make express credibility determinations and set forth the inconsistencies in the record that cause him to reject the claimant's complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005), *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence." *Masterson*, 363 F.3d 738. The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. *Id.* Although credibility determinations are primarily for the ALJ rather than the Court, the

ALJ's credibility assessment must be based on substantial evidence.  *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988).

Although the ALJ found that Brooks's impairments could be reasonably expected to cause some of his claimed symptoms, the ALJ found that the extent of the symptoms was not credible.  The ALJ discredited Brooks in part because Brooks was repeatedly noncompliant with his doctors' treatment advice.  Noncompliance with treatment may be considered as part of the credibility analysis.  *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001).  The ALJ correctly noted that Brooks was twice reported as noncompliant with his prescribed physical therapy routines in 1999 and that Brooks repeatedly deferred medial branch blocks, radiofrequency ablation, and steroid injections in 2011.

One reason Brooks gave for declining treatment was work conflict – a rationale absent for much of the recent record.  Another reason cited was insufficiency of funds; however, the ALJ correctly notes that Brooks obtained medical coverage from the State of Missouri in January 2011 (Tr. 21, 204–07) and that during a large portion of the record, Brooks was noted to be using costly recreational substances including marijuana, cocaine, cigarettes, and alcohol.

Brooks argues that the ALJ cannot consider expenditures on drugs as part of the credibility analysis, citing *Ambrosini v. Astrue*, 727 F. Supp. 2d 414 (W.D. Penn. 2010).  But in that case, the ALJ improperly found that if the claimant

stopped using drugs, any disability would vanish – a judgment not supported by medical evidence. *Id.* at 431. Here, the ALJ made a finding supported by the evidence that Brooks placed greater importance on using drugs than on paying for treatment, and this finding undercuts Brooks's claims as to severity of pain.

There is other evidence in the record to support a finding that Brooks's impairments were less restrictive than claimed. In 2010, Dr. Devoe noted that there was no discrete diagnosis to justify the use of narcotic pain medications and ceased prescribing the medications to Brooks. Additionally, Brooks's testimony at the hearing that he had experienced some numbness in his arm and fingers conflicted with his treatment records from July 2011, when he denied radiation of pain, tingling, and numbness. Tr. 427. As recently as March 2011, Brooks had full motor strength, normal reflexes, and coordinated and smooth gait. Tr. 439. Brooks also testified that his pain medications provided considerable symptomatic relief. This weighs in favor of the ALJ's determination. *See Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be disabling.") (citation omitted). Finally, Brooks continued to perform concrete work part-time until 2010. This work was done despite the presence of the same or similar impairments as now alleged disabling. His ability to work, even part-time, under those conditions undermines his claims for disability. *See* 20 C.F.R. § 416.971; *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th

Cir. 2008) (noting ability to work despite "extreme fatigue"); *Browning v. Sullivan*, 958 F.2d 817, 823 (8th Cir. 1992).

Brooks essentially asks me to reweigh the evidence. But I may neither reweigh the evidence nor substitute my opinion for the ALJ's. *Young*, 221 F.3d at 1068. The ALJ properly considered Brooks's allegations but cited several valid reasons for finding them not credible. Substantial evidence exists to support the ALJ's credibility and RFC determinations.

### 2.2.2   *Vocational Expert Testimony*

Brooks argues that ALJ improperly rejected the vocational expert's testimony that a person with an RFC as reflected in the fourth, most severe, hypothetical could not obtain work in the local or national economy. But that hypothetical did not comport with the claimant's RFC as determined by the ALJ. The expert was, however, presented with a hypothetical matching Brooks's RFC, and the expert testified that such an individual could find and perform work in the local and national economies.

Testimony from a vocational expert based on a properly phrased hypothetical constitutes substantial evidence. *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). The hypothetical need only include those impairments that the ALJ determines are substantially supported by the record as a whole. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). As noted above, the ALJ's RFC

determination is supported by substantial evidence.  The hypothetical question rephrased the RFC for the VE and was therefore proper.  The VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.

Accordingly

**IT IS HEREBY ORDERED** that the decision of the Commissioner denying benefits is **affirmed**.

A separate judgment in accordance with this Memorandum and Order is entered this date.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 21st day of July, 2014.